IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 1, 2011 Session

## DAVE BRUNDAGE ET AL. V. CUMBERLAND COUNTY ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section
Chancery Court for Cumberland County
No. 09-CH-271    Ronald Thurman, Chancellor**

_____

**No. E2010-00089-SC-R11-CV - Filed December 19, 2011**

_____

This appeal calls into question the proper procedure for obtaining judicial review of a local legislative body's land use decision under the "Jackson Law," Tenn. Code Ann. §§ 68-211-701 to -707 (2011). The opponents of a coal ash landfill, approved by the Cumberland County Commission, filed a petition for a statutory writ of certiorari in the Chancery Court for Cumberland County seeking judicial review of the Commission's decision. The trial court dismissed the petition because it was not verified as required by Tenn. Code Ann. § 27-8-106 (2000). The Court of Appeals affirmed. *Brundage v. Cumberland Cnty.*, No. E2010-00089-COA-R3-CV, 2010 WL 3025538, at *4 (Tenn. Ct. App. Aug. 4, 2010). We granted the petitioners' application for permission to appeal because the Jackson Law does not specifically define the procedure for seeking judicial review of a local legislative body's decisions. We have determined (1) that a local legislative body's decision under the Jackson Law may be challenged either by a petition for a statutory writ of certiorari or by a complaint for declaratory judgment and (2) that the trial court and the Court of Appeals erred by failing to treat the statutory petition for writ of certiorari as a complaint for declaratory judgment.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Elizabeth L. Murphy, Nashville, Tennessee, for the appellants, Dave Brundage; Black Cat Lodge, LLC; John Coye; Barbara Coye; David Cobb; Sonja Cobb; Michael Lollar; Sherry Lollar; Larry Oran; Mary Oran; Troy Melton; Sandra Melton; Louse Devillon; Joan Devillon; Carolyn Jozwiak; Vincent Jozwiak; Phillip Miller; and Patty Miller.

Randal R. Boston, Crossville, Tennessee, for the appellees, Cumberland County and Cumberland County Commission.

William L. Penny and Corinne E. Martin, Nashville, Tennessee, for the appellees, Smith Mountain Solutions, LLC.

**OPINION**

**I.**

Wright Brothers Construction ("Wright Brothers") decided to construct a coal ash landfill on Smith Mountain in Cumberland County. The company and the county officials entered into a "Host Agreement" which obligated Wright Brothers to form a new entity, Smith Mountain Solutions, LLC, that would construct and operate the landfill and pay "a substantial host fee" to the county. After rumors about the negotiations between Wright Brothers and the county began to spread, Dave Brundage, a property owner on Smith Mountain, asked the mayor of Cumberland County about the landfill and was told that it "was a done deal."

The county officials presented Resolution 0609-12 approving the plans for the landfill to the Cumberland County Commission ("Commission"). After proper public notice, the Commission held a hearing on the resolution on June 2, 2009. In papers filed in the later court proceeding, the landfill's opponents characterized this hearing as one-sided and tumultuous. Following the meeting, seven hundred persons signed a petition opposing the landfill and presented the petition to the mayor and the county commissioners. Nevertheless, the Commission approved Resolution 0609-12 on June 15, 2009.

On August 12, 2009, seventeen individuals and the Black Cat Lodge, LLC, filed a "statutory petition for writ of certiorari" in the Chancery Court for Cumberland County against Cumberland County, the Cumberland County Commission, and Smith Mountain Solutions ("Cumberland County defendants") seeking judicial review of the county's approval of the landfill in accordance with Tenn. Code Ann. § 68-211-704(c) (2011). On October 1, 2009, the Cumberland County defendants moved to dismiss the petition on the ground that the court lacked subject matter jurisdiction because the residents' petition "was not verified by sworn affidavit." They also asserted that the residents could not cure this defect in their petition because more than sixty days had elapsed since the Commission's approval of Resolution 0609-12.[1]

---

[1]Statutory writs of certiorari must be filed within sixty (60) days of the entry of decisions being reviewed. Tenn. Code Ann. § 27-9-102 (2000).

On November 4, 2009, the petitioners filed an "amended petition for judicial review" that omitted any reference to a statutory writ of certiorari. Each petitioner attached an affidavit to the amended petition affirming the truth of the allegations in the petition. On November 12, 2009, the petitioners also filed a response to the Cumberland County defendants' motion to dismiss insisting that they were also seeking judicial review under the Jackson Law's judicial review provision, which they believed operated independently and separately from the judicial review proceeding under a statutory writ of certiorari.

Following a hearing on the Cumberland County defendants' motion to dismiss, the trial court filed an order on December 20, 2009, dismissing the petition. The court, relying on *Tennessee Waste Movers, Inc. v. Loudon County*, 160 S.W.3d 517 (Tenn. 2005), found that a writ of certiorari was the only way to obtain judicial review of a county's decision under the Jackson Law. The court also concluded that petitions for a writ of certiorari must be verified and must be filed within sixty days following the action to be reviewed and that the court "lost subject matter jurisdiction of this case" because the residents' petition had not been verified. The Court of Appeals affirmed the trial court's decision. *Brundage v. Cumberland Cnty.*, 2010 WL 3025538, at *4. We granted the petitioners' application for permission to appeal to determine whether Tenn. Code Ann. § 68-211-704(c) limits the procedure for seeking judicial review of a county legislative body's decision under the Jackson Law to a statutory writ of certiorari. We have determined that it does not.

## II.

Our task in this case is to determine the meaning of Tenn. Code Ann. § 68-211-704(c), which provides that "[j]udicial review of the legislative body's determination shall be a de novo review before the chancery court for the county in which the landfill is proposed to be located." The Cumberland County defendants insist that the statute's language limits the procedure for obtaining judicial review of a local legislative body's decision under the Jackson Law to a statutory writ of certiorari. The petitioners assert that the statute should be read more broadly and that it does not limit the vehicle for obtaining judicial review of a local legislative body's decision to a statutory writ of certiorari.

Issues of statutory construction are questions of law that we review de novo with no presumption of correctness attaching to the lower courts' decision. *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241-42 (Tenn. 2010); *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009).

Our role in construing a statute is first to ascertain and then to give the fullest possible effect to its purpose without unduly restricting its coverage or expanding it beyond its intended scope. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009); *State v. Sherman*, 266

S.W.3d 395, 401 (Tenn. 2008); *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn.2008).

The natural place to start is with the language of the statute itself. When that language is "clear and unambiguous," this Court will apply its plain meaning without adopting a forced interpretation that would restrict or broaden the statute's scope. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Only when the language is ambiguous may we look to the legislature's intent, which may be discerned from the "broader statutory scheme, the history of the legislation, or other sources." *Seals v. H & F, Inc.*, 301 S.W.3d at 242; *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010); *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002). A statute is ambiguous if it "can reasonably have more than one meaning." *Lee Med., Inc. v. Beecher*, 312 S.W.3d at 527 & n.20 (citing *LeTellier v. LeTellier*, 40 S.W.3d 490, 498 (Tenn. 2001); *Bryant v. HCA Health Servs. of N. Tenn., Inc.*, 15 S.W.3d 804, 809 (Tenn. 2000)).

Guiding our inquiry is the presumption "that the General Assembly was aware of its prior enactments and knew the state of the law at the time it passed the legislation." *Seals v. H & F, Inc.*, 301 S.W.3d at 242. We also presume that the General Assembly is aware of how courts have previously construed its statutes, *Lee Med., Inc. v. Beecher*, 312 S.W.3d at 527; *Hicks v. State*, 945 S.W.2d 706, 707 (Tenn. 1997), and that it would not wish to enact an "absurdity." *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997).

**III.**

The ownership of property has been considered to be a fundamental right ever since the founding of this country. It was so important to the colonists that an early draft of the Declaration of Independence stated that all individuals are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Property.[2] Although Thomas Jefferson eventually substituted "the pursuit of Happiness" for "the pursuit of Property," for many, the pursuit of happiness still entails acquiring and owning property.[3]

Even though the right to acquire, possess, and use property remains fundamental, *see Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831 (1987); *Stratton Claimants v. Morris Claimants*, 89 Tenn. 497, 513-15, 15 S.W. 87, 90-91 (1891); *State ex rel. Elvis*

---

[2]*See* Garry Wills, *Inventing America: Jefferson's Declaration of Independence* 240 (2002); Jean Stefancic, *Talk the Talk, But Walk the Walk: A Comment on Joan Williams's Reshaping the Work-Family Debate*, 34 Seattle U. L. Rev. 815, 816-17 (2011) ("Stefancic"); Brent Adams, *The Pursuit of Virtue*, 4 Nev. Law. 26, 27 (June 1996) ("Adams"); Calvin Woodard, *Listening to the Mockingbird*, 45 Ala. L. Rev. 563, 576 n.18 (1994).

[3]*See* Stefancic, 34 Seattle U. L. Rev. at 817.

*Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 96 (Tenn. Ct. App. 1987), a person's possession and use of property is not beyond the reach of the appropriate exercise of the state's power to protect the health, safety, and welfare of its citizens. We have noted that

> Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient.

*Spencer-Sturla Co. v. City of Memphis*, 155 Tenn. 70, 81, 290 S.W. 608, 612 (1927) (quoting *Commonwealth v. Alger*, 61 Mass. (7 Cush.) 53, 85 (1851)).

Throughout recorded history, governments have exercised their police power to enact land use regulations. In 451 B.C., Rome enacted the Laws of the Twelve Tables that "included fire, safety, and wastewater regulations for the purpose of protecting public health."[4] Following the great London fire of 1666, Parliament passed the "Act for the Rebuilding of London" that divided housing into four classifications with differing regulations for each.[5] The exercise of police power to enact land use regulations was also commonplace in colonial America.[6]

Despite the longevity and ubiquity of the states' exercise of their police power to regulate land use, the public's pervasive sense of independence and its mistrust of governmental regulation of property rights initially delayed and diluted the spread and impact of zoning regulations.[7] It was not until the Twentieth Century that a series of court decisions

---

[4]8 Eugene McQuillin, *Municipal Corporations* § 25.03, at 11 (3d rev. ed. 2000) ("McQuillin"); Jeannie Lee, Comment*, Tying Up Loose Ends: Resolving Ambiguity in Ballot Measure 37's Public Health and Safety Exemption*, 38 Envtl. L. 209, 219 (2008); *see generally* Susan F. French, *Servitudes Reform and the New Restatement of Property: Creation Doctrines and Structural Simplification*, 73 Cornell L. Rev. 928, 929 n.8 (1988).

[5]3 John Martinez, *Local Government Law* § 16.02 (Supp. 2009) ("Martinez").

[6]8 McQuillin, § 25.03, at 10-11.

[7]*See* Dep't of Econ. & Cmty. Dev., *Tennessee Planning Commissioner Training Handbook: "A Closer Look at Zoning,"* at 1 (2004) (hereinafter "*Training Handbook*"), *available at* http://www.tnapa.org/docs/Zoning_HB.pdf (last accessed Nov. 29, 2011).

paved the way for the enactment of comprehensive zoning laws by state and local governments.[8]

In 1935, the Tennessee General Assembly enacted statutes empowering cities and counties to enact zoning regulations.[9]  These statutes were based on model legislation that had been prepared by the federal government in the 1920s.[10]  These statutes were permissive. They "empowered" but did not require cities or counties to enact zoning regulations.  *See* Tenn. Code Ann. §§ 13-7-101(a)(1), -201(a)(1).

Many local governments in Tennessee declined to exercise their regulatory power. By 1989, sixty-nine counties, mostly rural ones, had not enacted zoning regulations.[11]  Many communities chose not to enact comprehensive zoning laws because their residents feared that they would be required to obtain a building permit to build a barn and for other similar reasons.[12]  However, while many recognized the desirability of protecting and preserving property rights, others became concerned that the lack of restrictions on land use in rural areas exposed citizens to the potential to "be taken advantage of by large commercial landfills."[13]

This concern was more than theoretical.  Without local land use regulations, a solid waste disposal company could construct a commercial landfill in a county simply by purchasing the property and by obtaining a permit from the State of Tennessee.  In the permitting process, the State would review the geology and hydrology of the proposed landfill site, *see*, *e.g.*, Tenn. Comp. R. & Regs. 1200-01-07-.02 (2010), but it would not take

---

[8]3 Martinez, § 16.03; *Training Handbook*, at 1-2; *see also Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Lincoln Trust Co. v. Williams Bldg. Corp.*, 128 N.E. 209 (N.Y. 1920).

[9]Act of Feb. 12, 1935, ch. 33, 1935 Tenn. Pub. Acts 52 (codified as amended at Tenn. Code Ann. §§  13-7-101 to -119 (2011)) (counties); Act of Feb. 12, 1935, ch. 44, 1935 Tenn. Pub. Acts 117 (codified as amended at Tenn. Code Ann. §§ 13-7-201 to -212 (2011)) (cities); *see also Lamar Tenn., LLC v. Metro. Bd. of Zoning Appeals*, No. M2007-00883-COA-R3-CV, 2010 WL 761290, at *4 (Tenn. Ct. App. Mar. 5, 2010), *perm. app. denied* (Tenn. 2010); *KLN Assocs. v. Metro Dev. & Hous. Agency*, 797 S.W.2d 898, 902 (Tenn. Ct. App. 1990).

[10]*Training Handbook*, at 2.

[11]Statement of Representative Doug Jackson, House State and Local Government Committee, May 2, 1989.

[12]Statement of Representative Doug Jackson, Senate Energy and Natural Resources Committee, Apr. 12, 1989.

[13]Statement of Representative Doug Jackson, Senate Energy and Natural Resources Committee, Apr. 12, 1989.

into account human factors, such as the site's proximity to schools, churches, or residential areas.[14]  Because of the absence of local control, the property where the landfill would be built might not be put to its highest and best use from the county's perspective, and the value of the adjoining property might be adversely affected because of its proximity to the landfill.

Accordingly, Representative Jackson proposed a stop-gap measure[15] that would enable communities without comprehensive zoning ordinances to have "some input, not dictatorial rights to say yes or no, but to act reasonably and responsibly with respect to the criteria in the bill."[16]  The Tennessee General Assembly enacted Representative Jackson's proposal — now commonly known as the Jackson Law — in 1989.[17]  It permits counties and cities to opt into its provisions by a two-thirds vote of the appropriate legislative body.  *See* Tenn. Code Ann. § 68-211-707(a).[18]  Once a county or a city opts to be covered by the Jackson Law, its citizens are entitled to public notice and a hearing regarding a proposed landfill.  *See* Tenn. Code Ann. § 68-211-703.[19]  The Jackson Law also requires the county or city to "approve or disapprove the proposed new construction for solid waste disposal by landfilling or solid waste processing by landfilling," *see* Tenn. Code Ann. § 68-211-704(a), based on the eight criteria in Tenn. Code Ann. § 68-211-704(b).[20]

---

[14]Statement of Representative Doug Jackson, House State and Local Government Committee, May 2, 1989.

[15]As Representative Jackson envisioned it, his proposal would be in effect for two years or less until the General Assembly enacted the Tennessee Solid Waste Planning and Recovery Act [Tenn. Code Ann. §§ 68-211-601 to -608 (2011)].  *See* Act of May 25, 1989, ch. 515, § 9, 1989 Tenn. Pub. Acts 895, 898.  This sunset provision was amended twice, *see* Act of May 20, 1991, ch. 451, § 85, 1991 Tenn. Pub. Acts 731, 765 (extending sunset date to June 30, 1994); Act of Apr. 4, 1994, ch. 784, § 1, 1994 Tenn. Pub. Acts 520, 520 (extending sunset date to June 30, 1995), before it was eventually repealed in 1995.  Act of Mar. 13, 1995, ch. 5, § 4, 1995 Tenn. Pub. Acts 5, 5.

[16]Statement of Representative Doug Jackson, Senate Energy and Natural Resources Committee, Apr. 12, 1989.

[17]Act of May 25, 1989, ch. 515, 1989 Tenn. Pub. Acts 895 (codified as amended at Tenn. Code Ann. §§ 68-211-701 to -707 (2011)).

[18]Conversely, the Act permits counties and cities to opt out of its provisions by a similar two-thirds vote.  *See* Tenn. Code Ann. § 68-211-707(b).

[19]Although the record does not reveal when Cumberland County opted to be covered by the Jackson Law, the parties and the lower courts have acted on the belief that the Cumberland County Commission, at some point, opted to be covered by the Jackson Law.

[20]The eight criteria in Tenn. Code Ann. § 68-211-704(b) include:  (1) the type of waste to be disposed of at the landfill; (2) the method of disposal to be used at the landfill; (3) the projected impact on surrounding

(continued...)

In addition, the Jackson Law prescribes a procedure to obtain judicial review of a local legislative body's decision either to approve or to reject a landfill. Tenn. Code Ann. § 68-211-704(c) provides that "[j]udicial review of the legislative body's determination shall be a de novo review before the chancery court for the county in which the landfill is proposed to be located." Because this statute does not prescribe the procedure by which judicial review may be obtained, this appeal provides us with an opportunity to determine how parties dissatisfied with a local legislative body's exercise of its authority under the Jackson Law may seek judicial review.

## IV.

This is not the first occasion where we have been called upon to construe Tenn. Code Ann. § 68-211-704(c). Six years ago, we addressed the meaning of the language in the statute providing that the judicial review of the local legislative body's decision would be "de novo" in a case in which the trial court had declined to substitute its judgment for the local legislative body. After finding the language at issue to be "unambiguous and clear on its face," *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d at 519, we concluded that the trial court erred because the de novo review standard "permits the trial court to consider any new evidence and requires the trial court to consider the facts and determine the law as if no prior determination had been made." *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d at 521.[21]

Seizing on our conclusion in *Tennessee Waste Movers, Inc. v. Loudon County* that Tenn. Code Ann. § 68-11-704(c) was unambiguous and clear, at least with regard to the issue before the Court at the time, the Cumberland County defendants insist that Tenn. Code Ann. § 68-11-704(c) restricts the mechanism for obtaining judicial review of a local legislative body's decision under the Jackson Law to a statutory writ of certiorari. Even though this issue was not directly before the Court in *Tennessee Waste Movers, Inc. v. Loudon County*, the Cumberland County defendants insist that this conclusion is necessarily implied because Tennessee Waste Movers, Inc. had sought judicial review of the county's denial of the

---

[20](...continued)
areas from noise and odor created by the proposed landfill; (4) the projected impact on property values on surrounding areas created by the proposed landfill; (5) the adequacy of existing roads and bridges to carry the increased traffic projected to result from the proposed landfill; (6) the economic impact on the county, city or both; (7) the compatibility with existing development or zoning plans; and (8) any other factor which may affect the public health, safety or welfare.

[21]In reaching this conclusion, we expressly overruled the holding in *Tucker v. Humphreys Cnty.*, 944 S.W.2d 613, 619-21 (Tenn. Ct. App. 1996).

expansion of its landfill using a statutory writ of certiorari.[22]   The Cumberland County defendants have placed more weight on *Tennessee Waste Movers, Inc. v. Loudon County* than it can bear.

The focus of *Tennessee Waste Movers, Inc. v. Loudon County* was on the meaning of "de novo review" in Tenn. Code Ann. § 68-11-704(c).  In the course of explaining the legal import of "de novo review," this Court differentiated between the review process required by both common-law and statutory writs of certiorari and the process required by the Jackson Law.  We noted that "the [de novo] standard of review is not dependent upon the standards of review required by either the common law writ of certiorari or the statutory writ of certiorari." *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d at 520.  Accordingly, our decision did not foreclose the use of any appropriate, recognized method for seeking judicial review of a local legislative body's decision under the Jackson Law.

When the Tennessee General Assembly empowers state or local government entities to make decisions affecting the rights of citizens, it has the authority and discretion to prescribe the procedure for obtaining judicial review of these decisions.  On many occasions, the General Assembly has demonstrated its ability to pick and choose among different remedies, as well as its ability to be precise about the manner in which a decision should be reviewed.  The General Assembly has, in different contexts, prescribed the use of common-law writs of certiorari,[23] statutory writs of certiorari,[24] the Uniform Administrative Procedures Act,[25] and declaratory judgments.[26]

---

[22]*Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d at 518.

[23]*See, e.g.*, Tenn. Code Ann. § 7-51-1109(d)(1) (2011) (counties' decisions regarding licensing of adult-oriented establishments); Tenn. Code Ann. § 56-12-109(c) (2008) (decisions regarding insurance guaranty associations); Tenn. Code Ann. § 57-5-413 (2002) (Commissioner of Revenue's actions with regard to the shipment of beer); Tenn. Code Ann. § 57-9-203(a) (2002) (decisions by the Tennessee Alcoholic Beverage Commission).

[24]*See, e.g.*, Tenn. Code Ann. § 49-5-513(a) (2009) (disciplinary decisions regarding tenured teachers) (this statute has been characterized as a species of statutory writ of certiorari in *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987)); Tenn. Code Ann. § 57-5-108(d) (Supp. 2011) (revocation or suspension of a permit to sell beer); Tenn. Code Ann. § 63-12-128(c) (2010) (decisions of the Board of Veterinary Examiners).

[25]*See, e.g.*, Tenn. Code Ann. § 27-9-114(a)(1) (Supp. 2011) (decisions by certain county or municipal civil service boards).

[26]*See, e.g.*, Tenn. Code Ann. § 47-18-1807(e) (2001) (violations of the Foreign Food Disclosure Act of 1997); Tenn. Code Ann. § 65-2-105 (2004) (validity of the rules of the Tennessee Regulatory Authority).

The procedure for judicial review under the Jackson Law is open-ended. The General Assembly has stated only that the review shall be "de novo . . . before the chancery court for the county in which the landfill is proposed to be located." Tenn. Code Ann. § 68-211-704(c). We must presume that the General Assembly made a conscious decision not to precisely define how local legislative bodies' decisions under the Jackson Law could be judicially reviewed. *See Lee Med., Inc v. Beecher*, 312 S.W.3d at 527-28; *State v. Jennings*, 130 S.W.3d 43, 46 (Tenn. 2004); *Harris v. State*, 102 S.W.3d 587, 591 n.6 (Tenn. 2003).

Based on the Jackson Law's broad language, we conclude that any method that enables the reviewing court to conduct a de novo review of the local legislative body's decision is compatible with Tenn. Code Ann. § 68-211-704(c). We have already held that in the context of proceedings to review decisions under the Jackson Law, the hallmarks of de novo judicial review include: (1) permitting the consideration of new evidence beyond the evidence presented to the local legislative body, (2) giving no deference to the local legislative body's decision, and (3) deciding the matter as if no prior determination had been made. *Tennessee Waste Movers, Inc v. Loudon Cnty.*, 160 S.W.3d at 519-521.

There are at least two procedures that meet the requirements for de novo review identified in *Tennessee Waste Movers, Inc. v. Loudon County*. The first is a petition for a statutory writ of certiorari in accordance with Tenn. Code Ann. §§ 27-9-101 to -114 (2000 & Supp. 2011). This procedure permits the introduction of new evidence, requires a de novo review, and directs the trial court to make its own findings of fact and conclusions of law. *Cf.* Tenn. Code Ann. § 27-9-111(b), (c); *Boyce v. Williams*, 215 Tenn. 704, 712, 389 S.W.2d 272, 276 (1965) ("The statutory writ of certiorari is authorized, in lieu of appeal, to correct errors of fact and law committed by an inferior tribunal. The review is de novo.").

The second procedure is a petition for declaratory judgment under Tenn. Code Ann. §§ 29-14-101 to -113 (2000 & Supp. 2011). The General Assembly has expressly determined that the declaratory judgment statutes should be "liberally construed and administered" in order "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tenn. Code Ann. § 29-14-113 (2000). In accordance with Tenn. Code Ann. § 29-14-103 (2000),

> [a]ny person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The Jackson Law is a statute that confers upon affected persons the right to seek judicial review of the validity of the local legislative body's decision making process. We see no reason why a petition for judicial review under Tenn. Code Ann. § 68-211-704(c) cannot proceed through a petition for a declaratory judgment. *See generally* Tenn. R. Civ. P. 57 ("The existence of another adequate remedy does not necessarily preclude a judgment for declaratory relief in cases where it is appropriate.").

This conclusion is consistent with the traditional dichotomy we have recognized with regard to the procedure for obtaining judicial review of other land use decisions by local governments. We have held that a petition for declaratory judgment is the appropriate way to obtain judicial review of essentially "legislative" decisions and that a petition for writ of certiorari is the appropriate way to obtain judicial review of "quasi-judicial" decisions. *Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983).

The proceeding before the local legislative body authorized by the Jackson Law is a hybrid. While the local legislative body is not amending an existing land use ordinance because such an ordinance does not exist, it is acting "legislatively" in the sense that it is making an ad hoc policy decision regarding the use to which a particular parcel of land may be put. However, the local legislative body is required to make its decision by considering seven specific and one general criteria. Tenn. Code Ann. § 68-211-704(b)(1) – (8). The local legislative body is also required to conduct a public hearing where interested persons are provided the opportunity to comment and to transcribe or record the comments made at the hearing "to assist in the final determination of approval of the proposed new landfill." Tenn. Code Ann. § 68-211-703(e). The application of pre-defined standards, the requirement of a hearing, and the requirement of a record are earmarks of quasi-judicial proceedings.

The General Assembly could have accorded more weight to a local legislative body's application of the Jackson Law by prescribing the more constraining standard of judicial review available with the statutory writ of certiorari. However, in the Jackson Law, the General Assembly opted for the broader standard of review that is generally associated with judicial review of legislative decisions. Accordingly, proceedings seeking judicial review of a local legislative body's decision under the Jackson Law are "not dependent upon the standards of review required by either the common law writ of certiorari or the statutory writ of certiorari." *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d at 520.

**V.**

There is no question that petitions for a statutory writ of certiorari must satisfy the requirements of both Article VI, § 10 of the Tennessee Constitution and Tenn. Code Ann. § 27-8-106 (2000). There is likewise no question that the petition filed by the affected residents in this case within sixty days after the decision of the Cumberland County

-11-

Commission did not comply with the constitutional and statutory requirement that it be supported by oath or affirmation. The residents' belated effort to cure this defect is to no avail. *See Crane Enamelware Co. v. Smith*, 168 Tenn. 203, 205-06, 76 S.W.2d 644, 644-45 (1934) (holding that an effort to cure the omission of a verification on the petition for writ of certiorari beyond the deadline for filing the writ was not permitted).

However, the fact that the residents' petition did not satisfy the formal requirements for a writ of certiorari does not necessarily mean that the petition must be dismissed. In other land use planning cases, the courts have consistently been lenient with regard to their construction of the petition. For example, we have permitted an improperly filed petition for declaratory judgment to be treated as a petition for writ of certiorari, *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990), and conversely, we have allowed an improperly filed petition for writ of certiorari to be treated as a petition for declaratory judgment. *Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d at 342.

When appropriate, the courts should give effect to the substance of a pleading rather than its form. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010); *see also Bemis Co. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979) (holding that courts should construe motions based on their substance rather than their title). Thus, even though the residents' initial petition was styled as a "statutory petition for writ of certiorari," the body of the petition reflects unmistakably that the residents were seeking judicial review of the Cumberland County Commission's decision under the Jackson Law to authorize Smith Mountain Solutions, LLC to construct a coal ash landfill on Smith Mountain.

When the General Assembly enacted the Jackson Law, it intended to afford rural Tennesseans a reasonable method for voicing their objections to the construction of commercial landfills. An important procedural safeguard to ensure that the citizens' voices would be heard is the broad judicial review provision contained in Tenn. Code Ann. § 68-211-704(c). The decisions of the trial court and the Court of Appeals not to construe the residents' petition in this case as a petition for declaratory judgment frustrates the purpose the General Assembly reflected in the broad language of Tenn. Code Ann. § 68-211-704. Accordingly, we find that both the trial court and the Court of Appeals erred by not construing the residents' petition as a petition for declaratory judgment and thereby permitting the petition to proceed to a hearing.

## VI.

We reverse the judgment of the Court of Appeals and the trial court and remand the case to the trial court for a de novo review of the decision of the Cumberland County Commission in accordance with the criteria contained in Tenn. Code Ann. § 68-211-704(b).

We tax the costs of this appeal in equal proportions to Cumberland County and Smith Mountain Solutions, LLC, for which execution, if necessary, may issue.

_____

WILLIAM C. KOCH, JR., JUSTICE