IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2018 Session

## DURACAP ASPHALT PAVING CO. INC. v. CITY OF OAK RIDGE ET AL.

Appeal from the Chancery Court for Anderson County
No. 16CH8034    M. Nichole Cantrell, Chancellor

———————————————————

No. E2017-02414-COA-R3-CV

———————————————————

The unsuccessful bidder on a contract for a street resurfacing project brought suit against the City of Oak Ridge, alleging that the city had not followed the competitive bidding process mandated by its municipal code. Plaintiff's complaint sought declaratory relief, equitable relief and damages, as well as review under a writ of certiorari. The trial court determined that the lawsuit presented a proper case for review under the common law writ of certiorari and dismissed the pleaded original causes of action, finding their joinder to be inappropriate. The certiorari action was later dismissed after the trial court determined that it was not supported by a proper oath or affirmation. On appeal, plaintiff challenges the trial court's conclusion that this case was proper for certiorari review. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

W. Edward Shipe and Nicholas W. Diegel, Knoxville, Tennessee, for the appellant, Duracap Asphalt Paving Company, Incorporated.

John T. Batson, Jr. and Brian R. Bibb, Knoxville, Tennessee, for the appellee, City of Oak Ridge, Tennessee.

## OPINION

## BACKGROUND

On April 5, 2016, the City of Oak Ridge ("the City") issued an "Invitation to Bid and Instructions to Bidders" for contract "FY2016-168 Street Milling and Resurfacing

Project" ("the Project Contract"). The invitation indicated that the City would receive bids until April 13, 2016 and noted that "The City will make the award as soon as practicable to the lowest responsible Bidder, price and other factors considered, provided it is reasonable and in the best interest of the City. Ultimately, only two bids were submitted in relation to the Project Contract. One bid was received from the Appellant, Duracap Asphalt Paving Co., Inc. ("Duracap"); the other bid was received from Rogers Group, Inc. ("Rogers Group").

On April 14, 2016, City Engineer Roger Flynn submitted a memorandum to Mark S. Watson, the City Manager, recommending that Duracap be awarded the Project Contract. Specifically, the memorandum stated:

> **<u>Recommendation</u>**
>
> Sealed bids were requested with two bids received and the recommended award is to the lowest bidder, with a submitted bid of $408,644.60. Staff recommends approval of the resolution as submitted that totals $430,000, allowing a contingency of $21,355.40 for unforeseen subsurface conditions.

On April 27, 2016, the City Manager executed the memorandum and recommended that the City Council take action to award the Project Contract to Duracap.

Action by the City Council was necessary, because under the City's municipal code, obtaining material or services that involve an expenditure of more than $25,000.00 must be done by way of a City Council resolution.

On May 9, 2016, the City Council convened at a regularly scheduled meeting in the City's "Municipal Building Courtroom." Among the items that had been placed on the agenda was a resolution to award the Project Contract to Duracap. In addition to the City Council members, the City Attorney, the City Manager, citizens, and a representative of Rogers Group were present. No representative or officer of Duracap appeared.

Although the proposed resolution on the agenda had contemplated awarding the Project Contract to Duracap, a City Council member moved during the course of the meeting that the Project Contract be awarded to Rogers Group instead. Bill Chesney, a representative for Rogers Group, told the City Council that there was more value in Rogers Group's bid "mainly because of the sales tax." In expounding upon this claim, he informed the City Council as follows:

> We have an asphalt plant here in Oak Ridge. It's been here for 40, 60 years, however long, and so the sales tax will be paid to Anderson County. It would not be paid to Anderson County; it would be paid to the City of

Knoxville if you did use Duracap. So I just wanted to try to clear that up and to say that we put our quality up against anybody's.

The City Council eventually voted to award the Project Contract to Rogers Group, with only one member voting against the resolution.

Shortly thereafter, on May 19, 2016, Duracap filed a three-count "Complaint for Declaratory or Equitable Relief and Damages and Writ of Certiorari" against the City in the Anderson County Chancery Court. Duracap alleged that, although it was the lowest responsible bidder under the municipal code, the City had failed to award it the Project Contract. In addition to contending that any contract the City had with Rogers Group should be considered void, Duracap requested certain damages and sought certiorari review.

In a subsequently-filed answer, the City denied that it had violated its code and sought dismissal of Duracap's case based on, among other reasons, Duracap's failure to join Rogers Group, which the City averred was an indispensable party. The City's answer also specifically attacked the asserted claim for money damages, in part, because Duracap had allegedly "improperly joined an original action for money damages with an appellate action for certiorari review." On June 30, 2016, the City filed a motion for a protective order. In averring that it should not be subject to discovery, the City argued as follows: "[T]he Plaintiff seeks review of an administrative decision applying existing ordinances, this case is one for common law certiorari, and not for declaratory relief." Duracap, of course, opposed the City's motion for a protective order. It does not appear from the record that the trial court ever specifically ruled on the motion.

On September 9, 2016, the City filed a motion to dismiss, again averring that Duracap's complaint should be dismissed for failure to join Rogers Group as an indispensable party. Then, on October 19, 2016, the City filed a "Partial Motion to Dismiss on Alternative Grounds," seeking dismissal of Duracap's claims for declaratory judgment and damages. In its October 19 motion, the City argued that the law was clear that the "common law certiorari is the sole and appropriate remedy for challenging the administrative decision of a municipal board."

Although Duracap would eventually amend its complaint to add Rogers Group as a defendant, the trial court entered an "Order of Partial Dismissal" on November 2, 2016. Therein, the trial court concluded that the common law writ of certiorari was the proper vehicle for review of the City Council's decision to award the Project Contract to Rogers Group. Because a petition for a common law writ of certiorari may not be joined with causes of action invoking the original jurisdiction of the trial court, the court dismissed Duracap's claims for declaratory relief, equitable relief, and damages. The trial court allowed the remainder of the case to proceed, treating Duracap's complaint as a petition for a common law writ of certiorari.

On October 23, 2017, the City filed a motion to dismiss for lack of subject matter jurisdiction. Therein, the City alleged that Duracap's complaint did not comply with the statutory and constitutional verification requirements that are mandatory when a petitioner seeks a writ of certiorari. Shortly after the motion was filed, on November 20, 2017, the trial court entered an order granting the City's motion due to the court's determination that Duracap's complaint was not properly verified. Duracap timely appealed.

## ISSUES PRESENTED

In its appellate brief, Duracap presents three issues for our review, which we have restated as follows:

•Whether the trial court erred in granting the City's motion to dismiss Count I of the complaint for declaratory and equitable relief based on its conclusion that the relief for the City's alleged violations of the competitive bidding process was through a common law writ of certiorari.

•Whether the trial court erred in dismissing Count II for an award of damages.

•Whether the trial court erred by granting the City's motion for a protective order thereby preventing Duracap from taking discovery.[1]

## DISCUSSION

The crux of our focus in this appeal relates to the propriety of the trial court's November 2, 2016 order of partial dismissal. The trial court's grant of a motion to dismiss, which involves a legal conclusion, is subject to de novo review and is accorded no presumption of correctness. *Hamilton v. Abercrombie Radiological Consultants, Inc.*, 487 S.W.3d 114, 117 (Tenn. Ct. App. 2014) (citations omitted). As already noted, the trial court determined in its order of partial dismissal that this case was properly reviewable under the common law writ of certiorari. If the trial court was correct in that assessment, then its concomitant dismissal of the original causes of action asserted by Duracap was unquestionably proper. *See Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386 (Tenn. Ct. App. 1983) (noting that the "necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident"); *State v. Farris*, No. W2017-00438-COA-R3-CV, 2018 WL 1225746, at *11 (Tenn. Ct. App. Mar. 9, 2018) ("[T]he regulatory taking claim—and all of Mr. Howell's claims invoking the

---

[1] As we have noted in this Opinion, it is unclear to us that the trial court ever specifically ruled on the motion for a protective order. In any event, the propriety of a protective order regarding discovery is pretermitted in light of (a) our determination that this case was properly amenable to certiorari review and (b) our acknowledgment that Duracap has failed to challenge the trial court's determination that its writ of certiorari petition was not properly verified.

- 4 -

original jurisdiction of the chancery court—should have been dismissed at the outset. We emphasize that a litigant may not bring claims invoking the original jurisdiction of the Chancery Court when he or she has initiated the proceedings by seeking a writ of certiorari."); *Watson v. City of LaVergne*, No. M2006-00351-COA-R3-CV, 2007 WL 1341767, at \*4 (Tenn. Ct. App. May 7, 2007) ("An appellate cause of action (*i.e.*, a petition for common-law writ of certiorari) cannot be joined with an original cause of action ."). It further follows that, if the trial court was correct in holding that Duracap's grievances were amenable to certiorari review, the resulting final judgment below must be affirmed inasmuch as Duracap has not challenged the trial court's determination that its complaint was not properly verified in accordance with the law applicable to writs of certiorari. *See Bing v. Baptist Mem'l Hosp.-Union City*, 937 S.W.2d 922, 924 (Tenn. Ct. App. 1996) (noting that an issue was waived when it was not raised on appeal).

## I.

The overriding concern at issue is how Duracap's complaint should be considered. Although the filed complaint sought declaratory relief, equitable relief and damages, and review under a writ of certiorari, the parties[2] vigorously dispute which claims are properly implicated and capable of consideration in this case. As a general matter, Duracap contends that review under a writ of certiorari is unavailable and that it should be allowed to proceed under its claims which invoke the trial court's original jurisdiction. For its part, however, the City argues that the trial court was correct in holding that this case was proper for certiorari review.[3]

The appropriate mechanism to challenge the action of a governmental board or body depends on the nature of the function that is at issue. The essential question posed is "whether the inferior tribunal, board or officer exercised a legislative or an administrative function." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990) (citing *Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d 338, 341 (Tenn. 1983)). As this Court has explained, "[i]n the former case, an action for declaratory judgment is appropriate, while in the latter case, a petition for common law writ of certiorari is the proper method by which to challenge an administrative decision." *Kiger v. Nixon*, 1996 WL 512031, at \*5 (Tenn. Ct. App. Sept. 11, 1996) (citing *McCallen*, 786 S.W.2d at 639).

---

[2] We observe that Rogers Group was dismissed as a party to the appeal during the pendency of the appellate proceedings and, accordingly, Rogers Group did not file a brief in this matter.

[3] The City also makes a number of alternative arguments in its brief as to why relief against it is improper. Among other things, the City contends that it is immune from money damages based on principles of sovereign immunity and that the requested declaratory relief is now moot given the performance of the resurfacing project by Rogers Group. Given our disposition herein, we need not entertain the potential validity of these and other alternative arguments raised by the City.

Distinguishing a legislative action from an administrative action[4] can be done by focusing on whether the action taken makes new law or executes one already in existence. *McCallen*, 786 S.W.2d at 639 (citation omitted). "In order to qualify as an administrative, judicial, or quasi-judicial act, the discretionary authority of the government body must be exercised within existing standards and guidelines." *Id.*

Courts should, when appropriate, give effect to the substance of a pleading rather than its form. *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 371 (Tenn. 2011) (citations omitted). We note that the Tennessee Supreme Court has permitted, for example, an improperly filed petition for declaratory judgment to be treated as a petition for writ of certiorari, and conversely, it has allowed an improperly filed petition for writ of certiorari to be treated as a petition for declaratory judgment. *Id.* (citing *McCallen*, 786 S.W.2d at 640; *Fallin*, 656 S.W.2d at 342). Of course, while courts may yield to leniency when seeking to ascertain the substance of the relief that is being requested in a pleading, how a complaint or petition is construed can have significant consequences. As this Court has noted, "[w]here the relief sought in a declaratory judgment action is the same relief that is available under common law writ of certiorari, the action will be treated as a certiorari action, and *the requirements of such an action will be applied.*" *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 581 (Tenn. Ct. App. 2005) (emphasis added) (citations omitted).

Inasmuch as Duracap nominally sought both declaratory relief and review by way of the writ of certiorari in its initial complaint, how should that pleading be construed? As a preface to our ultimate conclusion, we express our opinion that the decision at issue was not legislative in nature. It was not a decision that brought new law into existence; rather, the decision to award the Project Contract to Rogers Group was a decision made within the confines of existing law in light of pre-defined standards.[5] In other words, as is characteristic of administrative action, the decision executed law already in existence. In this vein, we note that both parties acknowledge that the City's municipal code provides that "[c]ompetitive bids on all supplies, materials, equipment, and services, except those specified elsewhere in this chapter, and contracts for public improvements shall be obtained, whenever practicable, and *the purchase or contract awarded to the lowest responsible bidder*, provided that any or all bids may be rejected as prescribed in this chapter." (emphasis added). Further, we observe that the determination of the "lowest responsible bidder" is subject to the consideration of several criteria; the municipal code specifically outlines that price, along with nine other considerations, are to be taken into account. Among the considerations in addition to price are the "quality

---

[4] The term "administrative" is frequently used interchangeably in case law with "judicial" or "quasi-judicial." *McCallen*, 786 S.W.2d at 638 (citation omitted).

[5] Whether these standards were appropriately considered and applied, of course, presents another question. There can be no dispute, however, that the City's municipal code provided a framework restricting unbridled discretion with regard to the award of government contracts.

of performance of previous contracts or services" and the "character, integrity, reputation, judgment, experience and efficiency of the bidder."

In support of its argument that it is entitled to sue for declaratory relief as opposed to pursuing relief by way of a writ of certiorari, Duracap cites to a number of cases, namely *Browning-Ferris Industries of Tennessee, Inc. v. City of Oak Ridge*, 644 S.W.2d 400 (Tenn. Ct. App. 1982), *Anderson v. Metropolitan Development & Housing Agency*, No. M2012-01789-COA-R3-CV, 2013 WL 3941079 (Tenn. Ct. App. July 26, 2013), and *Duckworth Pathology Group, Inc. v. Regional Medical Center at Memphis*, No. W2012-02607-COA-R3-CV, 2014 WL 1514602 (Tenn. Ct. App. Apr. 17, 2014). Duracap cites to the *Browning-Ferris* decision in part to argue that, in a former *non-certiorari action*, the City had been successfully sued for violating a competitive bid process. Duracap cites to the latter two cases in support of its primary appellate contention that certiorari review is unavailable if the decision at issue was not first subject to an "internal appeal process."

With respect to the decision in *Browning-Ferris*, we have no quarrel with the holding in that case that an aggrieved low bidder had *standing* to sue the City for its failure to comply with competitive bidding requirements. However, we would note that the *Browning-Ferris* court did not contemplate the propriety, or lack thereof, of review by writ of certiorari, as both the *Anderson* and *Duckworth* decisions acknowledge. *See Duckworth Pathology Grp., Inc.*, 2014 WL 1514602, at *7 (noting that the issue before this Court in *Browning-Ferris* was "limited to standing, and there was no discussion of subject matter jurisdiction or the possibility of proceeding via a petition for certiorari"); *Anderson*, 2013 WL 3941079, at *4 n.2 ("Our opinion in *Browning-Ferris* contains no indication that the question of jurisdiction was ever raised at any point in the course of that litigation."). Certainly, therefore, *Browning-Ferris* does not stand for the proposition that challenges to this particular municipality's competitive bid processes must be pursued by declaratory judgment as opposed to through a writ of certiorari. That particular question was not specifically entertained.

Duracap's contention with respect to *Anderson* and *Duckworth* requires a slightly deeper look. As noted above, Duracap argues that these cases stand for the proposition that an "internal appeal process" is required with respect to the administrative decision being challenged if certiorari review is to be appropriately utilized. For the reasons explained below, we disagree.

In our view, having reviewed the relevant decisions in case law for what they hold and do not hold, what remains important to the present inquiry is whether or not the aggrieved party is seeking review of a decision that is the product of quasi-judicial action. If so, a common law writ of certiorari is the proper vehicle by which to seek review. Our understanding of this principle is not altered by the *Anderson* and *Duckworth* decisions

relied upon most prominently in this appeal by Duracap. Respectfully, we are of the opinion that Duracap's reading of these cases misses the mark.

In *Anderson*, a painting contractor filed a complaint against Nashville's Metropolitan Housing and Development Agency alleging that the agency had violated its own rules by failing to choose him as the lowest bidder on a particular contract. *Anderson*, 2013 WL 3941079, at *1. In response to the litigation brought against it, the agency contended that the trial court lacked subject matter jurisdiction and argued that the appropriate way to contest the contract award was by way of a common law writ of certiorari. *Id.* The trial court agreed and dismissed the case, finding that the contractor had filed his complaint after the sixty day time limit for seeking a writ had expired. *Id.* When this Court affirmed the trial court, we noted that the availability of certiorari review implies the existence of some sort of quasi-judicial procedure. *Id.* at *3. We specifically observed that, although a quasi-judicial procedure was available to the contractor, he had not pursued it:

> The [quasi-judicial procedure] for review in this case is found in Section VII of the MDHA handbook, which is titled "Appeals and Remedies.["] It declares among other things, that " . . . any protest against an award of a solicitation must be received from an offeror within fifteen (15) calendar days of award (Board approval, execution of contract or Purchase Agreement), or the protest will not be considered." The handbook also describes a series of graduated steps the agency is required to follow to resolve such a protest once it is received, including the participation of the MDHA Executive Director.

> Anderson did not file a protest with the MDHA related to any of the awards he objected to. Consequently, he did not pursue available administrative remedies. Additionally, he did not comply with the sixty day requirement for the filing of a petition for writ of certiorari.

*Id.*

As we read the opinion, certiorari review was the appropriate vehicle to challenge the award in *Anderson* because there was a quasi-judicial procedure in place. Although the aggrieved party did not take advantage of that procedure, had he pursued available administrative remedies, which we described as providing for a quasi-judicial procedure, further review should have then been by certiorari. Other cases have similarly held that certiorari relief is the proper remedy when aggrieved parties have attempted to bypass available quasi-judicial procedures which would themselves give rise to certiorari review. *See West*, 246 S.W.3d at 580 ("It is clear that Moore & Associates was required to exhaust its administrative remedies by appealing the zoning administrator's decision to the Board of Zoning Appeals. . . . [A] hearing before the Board would have resulted in a record that the court could review under the common law writ of certiorari

procedure[.]"). Although we recognize that a so-called "internal appeal process" was available in *Anderson*, Duracap's insistence on the necessity of such an appeal is misplaced. Certiorari was not required in *Anderson* because certiorari, by rule, follows from an "internal appeal process" at the administrative level. Rather, certiorari review was required in *Anderson* because there was a quasi-judicial procedure in place which would have made subsequent challenges to the resulting decision amenable to certiorari review. Although this quasi-judicial procedure happened to exist by way of an "internal appeal process," the mere existence of an appeal was not the dispositive criterion. As is evident from the guidance of a recent Tennessee Supreme Court case to which we will turn shortly, the performance of quasi-judicial action is what remains important to the availability, or lack thereof, of common law certiorari review.

In *Duckworth*, a surgical pathology group filed an action in chancery court claiming that the Regional Medical Center at Memphis ("the Med") had violated its own rules and acted arbitrarily by failing to award the pathology group a contract after a request for proposals process. *Duckworth Pathology Grp., Inc.*, 2014 WL 1514602, at *1. Although the pathology group pursued relief by way of the statutes governing petitions for certiorari, the Med filed a motion to dismiss asserting that the pathology group had no basis for challenging its contracting decisions given the absence of a contractual relationship between the parties. *Id.* at *1-2. During the hearing on its motion to dismiss, the Med then orally moved to dismiss the case given the fact that the pathology group's chancery court filings were not verified as is required for petitions for writs of certiorari. *Id.* at *2. Although the trial judge subsequently ruled orally that the case would be dismissed for lack of subject matter jurisdiction, the pathology group filed a motion to reconsider before a written order of dismissal was ever entered. *Id.* In its motion to reconsider, the pathology group asserted that it was never required to file a writ of certiorari to obtain relief against the Med; it further contended that a losing bidder in a competitive bidding process is allowed to file for declaratory and equitable relief. *Id.* As such, the pathology group argued that its action could not be dismissed for failure to comply with the statutory requirements for a writ of certiorari. *Id.* The trial court ultimately entered an order granting the motion to reconsider, whereby it retracted its ruling of dismissal and stated that it would reset the Med's pending motion to dismiss after the pathology group filed an amended petition. *Id.* The pathology group subsequently filed an amended pleading, omitting any reference to the certiorari statutes. *Id.* at *3. However, the trial court eventually dismissed the case, citing several bases for dismissal. *Id.*

When the case was appealed to this Court, we considered, among other things, whether the pathology group's petition should have been considered as a petition for writ of certiorari or a complaint for equitable relief. Although we referred to our opinion in *Anderson* in an attempt to address this question, we ultimately found the result in *Anderson* distinguishable. Whereas the aggrieved bidder in *Anderson* was required to proceed by a petition for certiorari, we held that it was inappropriate to require the

pathology group to do the same. *Id.* at *8. In explaining our reasoning on this issue, we stated as follows:

> Despite the many similarities between *Anderson* and the case at bar, we find that *Anderson* is not controlling as to the precise issue before us. In deciding that a petition for certiorari was the exclusive remedy for the aggrieved party before it, the *Anderson* Court specifically took note of the fact that the certiorari statutes "refer to court review of an order or judgment, thus implying the existence of some sort of quasi-judicial procedure at the administrative level that the aggrieved party has recourse to before having to turn to the courts." In *Anderson*, that quasi-judicial procedure was spelled out in the "Appeals and Remedies" section of the agency's handbook, which set forth the process for an offeror to protest a contract award and described "a series of graduated steps the agency [was] required to follow to resolve such a protest once it is received[.]" In the case before us, however, the Med had no process for a rejected bidder to pursue an appeal. [The pathology group] simply wrote a letter to the Med notifying it of its objections to the selection process, and the Med responded with a letter stating that the Med disagreed with [the pathology group's] position. Thus, there was no hearing or proceeding "of some sort of quasi-judicial procedure" that could be reviewed, and no record of the evidence. The provisions of the certiorari statutes "plainly presuppose that a judicial or quasi-judicial proceeding is the subject of review and that a 'record' of evidence, common in such proceedings, is available for certification to the reviewing court." "The application of pre-defined standards, the requirement of a hearing, and the requirement of a record are earmarks of quasi-judicial proceedings."

*Id.* (internal citations omitted).

Although the *Duckworth* court noted that, unlike in *Anderson*, there was no process for an appeal available to the pathology group, the upshot of this acknowledgment was that, in the absence of any further process which would have provided for a quasi-judicial procedure, certiorari review was improper given that the decision complained of was *not* the product of quasi-judicial action. Again, as was noted, "there was no hearing or proceeding . . . that could be reviewed, and no record of the evidence." *Id.*

Notwithstanding Duracap's desire to interpose an "appeal" requirement as a condition precedent to common law certiorari review, certiorari review is not necessarily contingent on the existence of an "internal appeal process" at the administrative level. Although there is no question that the *Anderson* court cited to the existence of internal administrative review as supporting the availability of certiorari review in that case,

- 10 -

again, it is not the existence of an "appeal" that is significant. The importance of the administrative appeal process referenced in *Anderson* lay in the fact that we considered that process to constitute the quasi-judicial action that is a predicate to certiorari review. *See Brundage*, 357 S.W.3d at 370 (noting that "a petition for writ of certiorari is the appropriate way to obtain judicial review of 'quasi-judicial' decisions").

As suggested earlier, a recent decision from the Tennessee Supreme Court, *McFarland v. Pemberton*, 530 S.W.3d 76 (Tenn. 2017), confirms our understanding that a governmental body's performance of a quasi-judicial function, as opposed to the existence of some "internal appeal process" at the administrative level, controls the availability of certiorari relief. In *McFarland*, the Tennessee Supreme Court addressed a controversy surrounding a judicial election that took place on August 7, 2014 for the Ninth Judicial District in East Tennessee. *Id.* at 80. One candidate for the election, Michael Pemberton, filed a nominating petition with the Roane County Election Commission ("the Election Commission") on February 3, 2014. *Id.* Although Mr. Pemberton's nominating petition listed an address in Roane County as his residence, Mr. Pemberton also owned a home in Knox County. *Id.* In addition to Mr. Pemberton, the judicial seat at issue was sought by another candidate, William McFarland. *Id.*

As is relevant to our discussion herein, a resident of the Ninth Judicial District went to the Election Commission in the spring of 2014 to challenge Mr. Pemberton's candidacy based on residency. *Id.* After this resident filed a complaint, the Election Commission conducted an independent investigation to determine whether Mr. Pemberton was a resident of Roane County and set the matter for a public hearing at its regular meeting on April 28, 2014. *Id.* at 80-81. Although Mr. Pemberton represented himself at the hearing, Mr. McFarland did not participate. *Id.* at 81. At the conclusion of the hearing, the Commissioners voted in favor of placing Mr. Pemberton on the ballot. *Id.* at 82. Mr. Pemberton eventually won the ensuing judicial election by a narrow margin over Mr. McFarland. *Id.* at 83.

Although Mr. McFarland filed an election contest in chancery court on August 20, 2014, premised solely on questions pertaining to Mr. Pemberton's residency, Mr. Pemberton filed a motion in opposition to the action arguing that he was entitled to judgment as a matter of law. *Id.* at 83-84. According to Mr. Pemberton, the suit was barred, among other reasons, based on the 60-day statute of limitations applicable for appeals of an administrative decision. *Id.* at 84. This position was also shared by Election Commission members who had been sued in the chancery contest in their official capacities. *Id.* The trial court ultimately dismissed Mr. McFarland's complaint, holding that the Election Commission hearing was a quasi-judicial act and that the decision resulting from that hearing was a final administrative decision. *Id.* at 84-85. According to the trial court, the proper method of challenging that decision was by filing a petition for writ of certiorari. *Id.* at 85. Because Mr. McFarland had not done so within sixty days of the Election Commission's decision, his claim was considered time-barred.

*Id.* Our Supreme Court ultimately affirmed, noting that "[b]ecause the Election Commission was performing a quasi-judicial function, its decision was subject to judicial review by common-law writ of certiorari." *Id.* at 104.

Were we to endorse the gloss Duracap requests that we place on the *Anderson* and *Duckworth* decisions, our actions would be clearly inconsistent with our Supreme Court's holding in *McFarland*. There was simply no mention of an administrative appeal or "internal appeal process" in *McFarland*, and Duracap's insistence on such a requirement is misplaced. As we have noted, the proper emphasis is on whether the governmental body was performing a quasi-judicial function. The *McFarland* court did not contemplate that certiorari review was inappropriate because there first needed to be some type of appeal of the Election Commission's decision; instead, it held that certiorari review was proper because the determination made was the product of a quasi-judicial function. It follows in this case that if the City Council was performing a quasi-judicial function when it awarded the Project Contract to Rogers Group, its decision was subject to judicial review by writ of certiorari. In our opinion, therefore, Duracap's insistence on an "internal appeal process" is but a red herring.[6]

With the foregoing in mind, we are of the opinion that certiorari review was the appropriate method of review in this instance. As the trial court noted when it entered its order of partial dismissal:

> The Plaintiff is requesting this Court to review a decision made by a lower board or commission to determine if said board failed to act according to the ordinances already set forth regarding the lowest bidder contracts with the City. The decision that Plaintiff is requesting review of is an administrative decision of a lower board that is not "legislative" in nature, therefore not requiring a declaratory judgment to obtain judicial review of a "legislative" decision.
>
> The administrative decisions of the city council of Oak Ridge, in applying an existing ordinance to a particular situation are quasi-judicial in nature and therefore common law Writ of Certiorari is the proper method to seek review.

This is an accurate assessment of the nature of the City Council action about which Duracap complains. Further, this case is not like *Duckworth*, where we noted that there "was no hearing or proceeding 'of some sort of quasi-judicial procedure' that could be

---

[6] We certainly do not question that, in many instances, an "internal appeal process" at the administrative level will be how a governmental body or board employs quasi-judicial procedure and performs a quasi-judicial function. With that said, the mere absence of an administrative appeal does not countenance against certiorari relief when the administrative decision is itself the product of quasi-judicial action.

- 12 -

reviewed, and no record of the evidence." *See Duckworth Pathology Grp., Inc.*, 2014 WL 1514602, at *8. Here, the issue of the Project Contract was heard at an open meeting of the City Council, and a record of the proceedings exists for review.

Indeed, in this particular case, the City Council's action in awarding the Project Contract to Rogers Group constitutes a quasi-judicial act. In addition to the fact that the City Council's decision was subject to pre-defined standards codified in the municipal code, the City Council's determination was made with opportunity to be heard on the issue, after the proposed resolution awarding the Project Contract to Duracap had been set on the City Council's agenda. Although Duracap did not participate in the meeting when the issue of the Project Contract was considered and heard, ostensibly because it believed it would secure the award based on its low bid, a representative from Rogers Group was present and participated. Moreover, a number of citizens shared concerns and comments during the consideration of the issue. Finally, a record of the proceedings exists, which enables a court to review whether or not the City Council acted permissibly in awarding the Project Contract to Rogers Group. Review by the common law writ of certiorari was appropriate in light of these considerations establishing the performance of quasi-judicial administrative action, and the trial court did not err in failing to hold otherwise. *See Brundage*, 357 S.W.3d at 370 (noting that a hearing, record, and application of pre-defined standards are earmarks of quasi-judicial proceedings).

In expressing our opinion on this issue, we certainly do not hold that the City Council's action in this matter was appropriate or would have been sustained upon proper certiorari review.[7] We simply hold that, given the existence of pre-defined standards by which the City Council's decision can be adjudged, public consideration of the issue, the opportunity to participate in the public hearing, and the availability of a record of the proceedings regarding the decision, common law certiorari was the proper vehicle for review. It therefore follows that the original causes of action asserted by Duracap were appropriately dismissed. Further, because Duracap did not appeal the trial court's determination that its petition was not properly verified as required for writs of certiorari, the trial court's final judgment of dismissal shall remain undisturbed.

---

[7] Again, whether the standards governing the City Council's action were appropriately applied or considered remains another question. Such concerns pertain to the outcome of certiorari review, not whether a writ of certiorari is the proper method by which to seek judicial review. Obviously, a governmental body's actions will not survive scrutiny under certiorari review if they are not supported by material evidence or can otherwise be considered illegal, arbitrary, or capricious. *See Waste Connections of Tenn., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2012-02290-COA-R3-CV, 2013 WL 1282011, at *6-8 (Tenn. Ct. App. Mar. 27, 2013) (reversing trial court's dismissal of common law petition for writ of certiorari when "factors and criteria not discussed, [and] no materials or evidence were introduced into the record prior to the vote on the Resolution").

## II.

In closing, we briefly comment on Duracap's claimed error that the trial court erred in granting the City's motion for a protective order. As an initial matter, as we have already noted, it does not appear that the trial court ever specifically ruled on the motion for a protective order. Although Duracap's brief recites that "[t]he trial court held that Duracap could not conduct discovery to support its challenge," no citation to the record is offered in support of this proposition. Therefore, even assuming the record did contain a ruling on the motion for protective order (of which we are presently unaware), Duracap's failure to provide appropriate citations regarding this matter results in a waiver of the issue. *See* Tenn. Ct. App. R. 6(a)(4) (noting that the written argument shall contain "[a] statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found"); *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Plaintiff's failure to comply with the Rules of Appellate Procedure and the rules of this Court waives the issues for review."). Regardless, the appropriateness of any protective order regarding discovery is a pretermitted concern given our holding herein and Duracap's failure to challenge the basis upon which its certiorari action was dismissed.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

_____
ARNOLD B. GOLDIN, JUDGE.

- 14 -