IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2024 Session

## TREZEVANT ENTERPRISES, INC. v. CITY OF GERMANTOWN, TENNESSEE

**Appeal from the Chancery Court for Shelby County**
**No. CH-05-1614-III          JoeDae L. Jenkins, Chancellor**

———————————————————

**No. W2024-00420-COA-R3-CV**

———————————————————

This appeal arises from a landowner's complaint seeking a declaratory judgment that proposed construction was consistent with a permitted non-conforming use on its property. The parties agreed that the property was rezoned in 1957 and that certain non-conforming uses are permitted on the property. However, the city opposed the declaratory action due to the landowner's refusal to submit plans to the city administrative zoning body to obtain its decision on whether the proposed use was a permissible extension of that non-conforming use. The city asserted that, without the landowner having applied for a building permit, the action was not ripe for adjudication. The trial court determined that the matter was ripe and that the landowner had standing, that it was entitled to a judgment as a matter of law, and that the proposed use was protected by the terms of the grandfather statute. Because the city was never permitted to rule on the proposed non-conforming use, we find that the matter was not ripe for review. Accordingly, the decision of the trial court is reversed, and the case is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and the Case Dismissed.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., joined. ARNOLD B. GOLDIN, J., not participating.

John D. Burleson, Matthew R. Courtner, Jackson, Tennessee, for the appellant, City of Germantown, TN.

J. Lewis Wardlaw, David Wade, Memphis, Tennessee, for the appellee, Trezevant Enterprises, Inc.

**OPINION**

# I. FACTS & PROCEDURAL HISTORY

The underlying facts of this case appear to be undisputed. In 1955, the City of Germantown ("the City"), the appellant, annexed certain parcels of real property. Included in that annexation were the parcels located at 7038 Poplar Avenue, 7040 Poplar Avenue, and 7092 Poplar Avenue. The underlying lawsuit and this appeal concern only the 7038 Poplar Avenue and 7040 Poplar Avenue parcels, but all three parcels are now under the common ownership of Mr. Stanley "Trip" Trezevant III, the owner of Trezevant Enterprises, Inc. ("Trezevant"), the appellee. In 1957, the parcels were owned by Mr. Bilbo Jones and were rezoned from commercial to residential use. At some time prior to the rezoning, Mr. Jones had begun using all three parcels to operate a commercial nursery business called Jones Brothers Tree Nursery and Landscape Company, and the business continued as a pre-existing non-conforming use of the property. An office building existed on the 7092 Poplar Avenue property prior to the rezoning, and Mr. Jones used it for the administration of the nursery activities which occurred on the 7038 and 7040 Poplar Avenue parcels. In April 1977, Mr. Jones sold the 7038 and 7040 Poplar Avenue parcels to Mr. Norman Brown. Later, Mr. Jones passed away, and the 7092 Poplar Avenue property was ultimately inherited by Ms. Yvone P. Rhea. Ms. Rhea conveyed the 7092 Poplar Avenue parcel to Mr. Brown by warranty deed dated August 24, 1987. Shortly thereafter, Mr. Brown began renting the office located on the 7092 Poplar property to a business called Carson's Tree Services. Sometime in 1990, Mr. Brown began renting another portion of the office located on 7092 Poplar to Germantown Lawn Service and Pest Control for office and administrative purposes.

Subsequently, the 7092 Poplar Avenue parcel was subject to litigation initiated in approximately 1992.[1] *See City of Germantown v. Norman Brown, Jr., et al.*, Shelby County Circuit Court No. 39807-7. The City sued Mr. Brown and the pest control business leasing the office on the property, claiming that the use violated the City's zoning ordinance and state law. In a judgment dated April 7, 1993, the Circuit Court applied Tennessee Code Annotated section 13-7-208 and Germantown Zoning Ordinance 25-388, to determine that the "use of the property [did] not violate either the city or state law." This decision was never appealed. Mr. Trezevant then purchased the 7092 Poplar Avenue property from Mr. Brown on May 25, 1993.

In the meantime, on October 16, 1986, Mr. Trezevant began leasing the 7038 and 7040 Poplar Avenue parcels, which are the subject of this litigation, from Mr. Brown. Mr. Trezevant started operating a plant nursery business called "Trip's Nursery" on the property.[2] At some point, Mr. Trezevant decided that he wanted to stop operating the

---

[1] The filings from that case are not all contained in the record. However, in that case, the parties stipulated that the litigation concerned only the 7092 Poplar Avenue property.

[2] The lease references only the parcel located at 7038 Poplar Avenue. However, it appears from the record and that the parties agree that the lease applied to both the 7038 Poplar Avenue and 7040 Poplar Avenue properties.

nursery business, raze the existing facilities, and construct a new structure which could be leased to third party businesses.[3]  Subsequently, Mr. Trezevant's attorney met with the Germantown City Attorney, Mr. C. Thomas Cates, to discuss whether the proposed use would be permissible.  Following this meeting, Mr. Cates sent a letter to Mr. Trezevant's counsel dated April 5, 2005, recounting the discussion.  In the letter, Mr. Cates agreed that certain non-conforming uses were permitted on the property due to those uses pre-dating the rezoning of the area to residential use.  *See* Tenn. Code Ann. 13-7-208(c).  He indicated that the nursery use was consistent with the use prior to the zoning change and could continue.  However, he also stated that while expansions of pre-existing non-conforming use can be permitted by the statute, changes in the type of business or activity were not permitted.  Thus, without evidence that an office use had begun on the subject property prior to the rezoning, the proposed change in use would not be permissible as the "leasing of office space [was] not a permitted non-conforming use."

Mr. Trezevant also met with Mr. Jerry Cook, who was serving as the Director of Community Development for the City of Germantown at the time.  In this role, Mr. Cook often met with property developers to discuss construction or architectural plans, though he was not empowered to approve these plans or issue building permits.  During these meetings, Mr. Trezevant and Mr. Cook discussed the desired building and Mr. Cook sketched out some rough drawings of the proposed office building.  However, Mr. Cook later stated in a sworn affidavit that he had "[a]dvis[ed] Trip Trezevant that[,] in my opinion, he would not obtain the support for building an office building or buildings on the subject property as the Mayor and Board of Alderman at the time did not want any construction upon the subject property other than residential."  After these two interactions, Mr. Trezevant decided to seek a declaratory judgment stating that the property could be used for the purpose of conducting retail sales of goods to the public and/or for the purpose of general offices.  However, Mr. Trezevant never applied for a building permit to construct an office or other building on the subject property.

The original complaint in this matter was filed on September 1, 2005, by Trezevant Enterprises, Inc.,[4] and sought a declaratory judgment establishing that the subject property could be used for the retail sale of goods and merchandise to the public and/or for the purpose of general offices pursuant to Tennessee Code Annotated section 13-7-208(g). The City responded by filing a motion to dismiss, claiming that Trezevant was not the real party in interest as it did not own the subject property but only leased it.  On December 20, 2005, an amended complaint was filed in which Mr. Norman Brown, Jr., both individually

---

[3] When the action was initially filed, Mr. Trezevant was deciding between the construction of a space which could be used to rent to third parties retail sellers or an office use.  However, when plans were filed with the trial court, they contained specifications for a 45,000 square foot office space and no retail sales space.

[4] Trezevant Enterprises, Inc. is the company through which Mr. Stanley Trezevant conducts his real estate business.  The business also operates out of the office building located at the 7092 Poplar Avenue property.

and as the Trustee of the Brown Family Trust, joined the lawsuit as a plaintiff. The City filed additional motions to dismiss for failure of the plaintiffs to apply to the City for the approval of the requested improvements prior to filing the lawsuit and claiming the relief sought should have been under a petition for writ of certiorari rather than a declaratory judgment action. The trial court denied the motion to dismiss in an order entered on June 29, 2007, and subsequently, Germantown filed an answer to the complaint on July 16, 2007.

It is unclear from the record what occurred next, but it appears that the parties engaged in discovery. The next filing contained in the record is the City's motion for summary judgment filed on September 29, 2011. In that motion, the City asserted that the plaintiffs were seeking an advisory opinion or, alternatively, that no interpretation of Tennessee Code Annotated section 13-7-208 would permit the plaintiffs to demolish the existing structures and construct an office building and/or shopping center. The parties briefed the matter extensively, and the motion was heard on February 8, 2012. During the proceedings, the trial court stated from the bench that it needed "some more specifics" before ruling on the issue of whether an office use was permissible on the subject property. Specifically, the trial court stated that the ruling could not be one in which it just allowed a "general office use" and reiterated the proposal needed "to be more specific." Accordingly, the trial court entered an order on March 1, 2012, in which it denied the motion for summary judgment and stayed the proceedings until "the Plaintiff file[d] with the Court specific written plans for use of the subject property."

On May 31, 2013, while the proceedings were stayed, Trezevant purchased the subject property from the Brown Family Trust. Subsequently, Mr. Brown voluntarily non-suited the claims asserted by him individually and on behalf of the trust. The case remained stayed until July 26, 2021, at which point, Trezevant filed a notice of filing "specific written plans" and submitted a one-page drawing of a building to be constructed on the subject property. The parties then filed competing motions for summary judgment. During a hearing, the trial court raised concerns with the issues of standing and ripeness, and the parties were instructed to brief the issues by an order entered on July 13, 2023. Both parties submitted briefs and a hearing on the matter took place on January 24, 2024. The trial court announced its decision on February 5, 2024, and determined that it could resolve the dispute. The trial court also reviewed the transcript of the February 8, 2012 proceedings which resulted in the order of stay so that it could establish the position of the trial court at the time the order was entered.[5] The trial court then stated that it would be ruling "[b]ased on the premise that lots 7038 and 7040 are to be treated as lots 7092 and that all are one lot."

---

[5] This case was filed in the chancery court of Shelby County, Tennessee in 2005. The matter had been heard by two prior chancellors between the time of its commencement and the subject hearing which occurred almost nineteen years later. Chancellor Jenkins reviewed the prior chancellor's 2012 statements from the bench during the proceedings to properly construe the order staying the proceedings.

The trial court also recognized that the order staying the proceedings contained an "instruction to submit a plan of use – to present that plan to the City and if denied, the Court [would] make a determination." The trial court considered whether the plans submitted by Trezevant complied with the order. The court stated that "[o]rdinarily, [it] would conclude that [the plans submitted] [did] not comply" and would have "require[d] the [p]laintiff to submit the detailed plans as it would be required by the City of Germantown." However, the trial court stated that as the City's position was "unequivocal as to not allowing the proposed building, it would be an effort in futility to require Plaintiff to expend resources to [apply] for a building permit." The trial court "conclude[d] that the proposed use [was] consistent with the use of a commercial building with offices for rent." A written order was entered on February 23, 2024, which incorporated these findings and awarded Trezevant a judgment as a matter of law, stating that the "proposed use of 7038 and 7040 Poplar Avenue as commercial buildings with offices for rent to others is permitted under the Grandfather Statute, Tenn. Code Ann. § 13-7-208, *et seq*." The City filed this appeal.

## II. Issues Presented

The appellant-City has presented the following issues on appeal which we have slightly reframed:

1. Whether Trezevant's declaratory judgment action was ripe for review.
2. If Trezevant's declaratory judgment action was ripe for review, then whether the proposed plan to demolish the existing nursery and construct a 45,000 square foot office building to be used for third party leasing constitutes a protected non-conforming use pursuant to Tennessee Code Annotated section 13-7-208.

For the following reasons, we reverse the judgment of the trial court.

## III. Discussion

The City's primary argument emanates from its assertion that the action should have been treated as a prematurely-filed common law writ of certiorari rather than a declaratory judgment action. The City contends that the action should be treated as a writ of certiorari, that a writ of certiorari requires an administrative decision to review, here there is no administrative decision to review because Trezevant did not follow the administrative process, and thus, the claims are not ripe for review.

Trezevant claims that it filed the petition pursuant to the Declaratory Judgment Act seeking a "declaration of the Grandfather Statute's application to the Subject Property." Trezevant relies primarily on our State Supreme Court's opinion in *Holdredge v. City of Cleveland*. 402 S.W.2d 709 (Tenn. 1966). In *Holdredge*, the Court determined that a

declaratory judgment action was appropriate where the challenge was to "the validity of [an] ordinance amending [a] zoning ordinance" and thus "certiorari [was] not the exclusive remedy." *Id.* at 713-14. The Court specified that "[t]he adoption of the amendment was a legislative act." *Id.* at 712. Trezevant also claims that the communications with Mr. Cates and with Mr. Cook constitute rejections of the proposed plans and thus, the case was ripe for adjudication. The trial court agreed with Trezevant and found that the action was brought "pursuant to the Declaratory Judgment Act" and was ripe for review.

## A. Nature of the Action

The distinction between whether a writ of certiorari or a declaratory judgment action is the correct procedure to obtain the type of relief Trezevant seeks weighs heavily on the remainder of this opinion. Therefore, we begin by addressing this issue. It is well-settled that the designation or label that a plaintiff places upon his or her claim for relief is not conclusive and binding upon the courts. As we have previously stated, "[c]ourts should, when appropriate, give effect to the substance of a pleading rather than its form." *Duracap Asphalt Paving Co. Inc. v. City of Oak Ridge*, 574 S.W.3d 859, 864 (Tenn. Ct. App. 2018) (citing *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 371 (Tenn. 2011)). Tennessee courts have previously treated actions filed as declaratory judgment actions as writs of certiorari, and *vice versa*. *See McCallen v. City of Memphis*, 786 S.W.2d 633, 639-40 (Tenn. 1990) (treating an action styled as a petition for a declaratory judgment as a petition for a writ of certiorari); *Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983) (treating an action styled as a petition for a writ of certiorari as an action for a declaratory judgment.) As we have explained, "[w]here the relief sought in a declaratory judgment action is the same relief that is available under common law writ of certiorari, the action will be treated as a certiorari action, and the requirements of such action will be applied." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 581 (Tenn. Ct. App. 2005) (citing *Johnson v. Metro. Gov't for Nashville Davidson Cnty., Tenn.*, 54 S.W.3d 772, 774 (Tenn. Ct. App. 2001)).

A writ of certiorari is the vehicle by which a party may seek judicial review of the decision of an inferior tribunal, board, or officer exercising judicial functions, to determine whether that entity "has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." Tenn. Code Ann. § 27-8-101. We have previously stated that, "[a] party subject to the decision of a local zoning board may seek judicial review of that decision 'by filing a petition for a common law writ of certiorari pursuant to Tenn. Code Ann. § 27-8-101.'" *Swann v. City of Kingsport*, No. E2023-01679-COA-R3-CV, 2024 WL 4678009, at *2 (Tenn. Ct. App. Nov. 5, 2024) (*quoting Cash v. Wheeler*, 356 S.W.3d 913, 915 (Tenn. Ct. App. 2011)).

Conversely, "a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted." *Dehoff v. Att'y Gen.*, 564 S.W.2d 361, 363 (Tenn. 1978) (citing *Luckenbach Steamship Co. v. United States*, 312 F.2d 545 (2d Cir. 1963)). A declaratory judgment action permits a party "interested under a deed,

will, written contract, . . . or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise" to "have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." Tenn. Code Ann. § 29-14-103.

As stated, the parties' positions differ as to the appropriate action which the appellee should have filed:  a common law writ of certiorari or a declaratory judgment action. A common law writ of certiorari is appropriate where a party seeks to challenge an action of lower authority which "is administrative or quasi-judicial in nature, rather than legislative in nature." *Moore & Assocs.,* 246 S.W.3d at 575 (citing Tenn. Code Ann. §27-8-101; *McCallen*, 786 S.W.2d at 640).  Conversely, in the context of zoning, a declaratory judgment action "is the proper remedy to be employed by one who seeks to invalidate an ordinance, resolution or other legislative action of county, city or other municipal legislative authority enacting or amending zoning legislation." *Fallin*, 656 S.W.2d at 342. To determine whether a petition for a writ of certiorari or a declaratory judgment action is the appropriate mechanism by which to seek judicial review, the court must determine what type of decision or action is being challenged.

In *Moore & Associates*, we explained the process used to determine whether an action of a lower authority is administrative or legislative in nature.  246 S.W.3d at 575. We  repeated the test used to determine whether a government function is legislative or administrative, which is "whether it 'makes new law or executes one already in existence.'" *Id.*  (quoting *McCallen*, 789 S.W.2d at 639).  We also found that "[d]eciding whether a particular situation meets the requirements of a zoning ordinance is an administrative function." *Id.* at 576. (Citing *McCallen*, 786 S.W.2d at 640).  We then opined that "'[t]he meaning of a zoning ordinance and its application to a particular circumstance are in the first instance, questions for the local officials to decide.'" *Id.* (quoting *Whittemore v. Brentwood Planning Com'n, City of Brentwood*, 835 S.W.2d 11, 16 (Tenn. Ct. App. 1992)).  Finally, we reiterated that "[a] decision to issue or not to issue a building permit is an administrative decision, whether made by an official or a board." *Id.* (*citing Thompson v. Metro Gov't of Nashville and Davidson County*, 20 S.W.3d 654, 659 (Tenn. Ct. App. 1999); *Harrell v. Hamblen Cnty. Q. Court*, 526 S.W.2d 505, 509 (Tenn. Ct. App. 1975)). Accordingly, we determined that the decision not to certify a certificate of compliance "was an administrative decision, subject to review by common law writ of certiorari." *Moore & Associates*, 246 S.W.3d at 577.

Later in that opinion, we considered the builder's argument that it should have been permitted to seek judicial review through a declaratory judgment action because "it was not entitled to obtain review by writ of certiorari" as it had not appealed the administrative decision to the board of zoning appeals. *Id.* at 580.  We noted that "[w]here the relief sought in a declaratory judgment action is the same relief that is available under common law writ of certiorari, the action will be treated as a certiorari action." *Id.* at 581 (citing

- 7 -

*Johnson*, 54 S.W.3d at 774; *Campbell v. Bedford Cnty. Regional Planning Comm'n*, No. M2003-00025-COA-R3-CV, 2004 WL 626724, at *4-5 (Tenn. Ct. App. March 29, 2004); *Kielbasa v. B & H Rentals, LLC.*, No. M2002-00129-COA-R3-CV, 2003 WL 21297315 (Tenn. Ct. App. May 22, 2003)). Accordingly, we determined that the proper method for seeking judicial review was a common law writ of certiorari, and thus, the builder was not entitled to proceed through a declaratory judgment action. *Id.* at 581.

In the present case, Trezevant seeks to establish what it is and is not permitted to do on its property. The parties agree the property was rezoned for residential use in 1957, and that Tennessee Code Annotated section 13-7-208, commonly referred to as the "Grandfather Clause," permits certain non-conforming commercial activities to be conducted on the property. The dispute concerns whether the commercial office use proposed by Trezevant constitutes a reasonable extension of that non-conforming use or if it constitutes a change in the use of the property. To determine whether the action was properly brought as a declaratory judgment action or should have been brought as a writ of certiorari, we must determine whether the zoning authority's decision regarding the proposed extension of a non-conforming use permitted on the land by the Grandfather Clause was "administrative or quasi-judicial in nature" or "legislative in nature." *Moore & Assocs.,* 246 S.W.3d at 575.

Our case law supports a finding that this is a matter of discretion for the applicable zoning authority. *See Whittemore*, 835 S.W.2d at 16 (stating that "[t]he meaning of a zoning ordinance and its application to a particular circumstances are, in the first instance, questions for the local officials to decide"); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 757, 760 (Tenn. Ct. App. 2000) (affirming the trial court's ruling that a zoning board acted within its *discretion* when it concluded a proposed building or addition was not a reasonable extension of a pre-existing non-conforming use. (emphasis added.)); *see also BMC Enterprises, Inc. v. City of Mt. Juliet*, 273 S.W.3d 619, 624 (Tenn. Ct. App. 2008) (reviewing a writ of certiorari action to determine whether a zoning board "exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently" when it determined that a crematorium was not a reasonable extension of a pre-existing non-conforming use which permitted the operation of a funeral home.); *Hutcherson v. Lauderdale Cnty. Bd. of Zoning Appeals*, 121 S.W.3d 372, 376 (Tenn. Ct. App. 2003) (stating that "the function of the BZA is to 'determin[e] whether or not the [Appellant's requested use] meets the standards of the [zoning] ordinance.'") (quoting *McCallen*, 786 S.W.2d at 640) (brackets present in original); *Thompson v. Dep't of Codes Admin., Metro. Gov't of Nashville & Davidson Cnty.*, 20 S.W.3d 654, 659 (Tenn. Ct. App. 1999) (stating that "[i]t is well established that the decision to grant or not grant a building permit is an administrative determination.") (citing *Harrel v. Hamblen Cnty. Q. Ct.*, 526 S.W.2d 505, 509 (Tenn. Ct. App. 1975)).

Had Trezevant followed the administrative process, the City's zoning authority would have received an application for the proposed construction and would then have used its discretion to determine whether it complied with the applicable zoning laws,

including whether it was a permissible extension of a pre-existing, non-conforming use permitted by the Grandfather Clause. *See Thompson*, 20 S.W.3d at 659 (stating that "[i]t is well established that the decision to grant or not grant a building permit is an administrative determination.") Importantly, this decision would not have considered whether the protections of the Grandfather Clause applied to the land, but rather, to the scope of the non-conforming use permitted, a question dependent on the facts of the case. *See Ready Mix v. Jefferson Cnty.*, 380 S.W.3d 52, 65 (Tenn. 2012) (finding a declaratory judgment action was appropriate despite the availability of a writ of certiorari because "[t]he complaint required an assessment of whether the Company, by its actions prior to the passage of the zoning ordinance, invoked the protections of Tennessee Code Annotated section 13-7-208 and qualified as a direct challenge to 'the applicability of th[e] ordinance' to the property"). The issue would have been subject to the discretion of the applicable zoning officials. Any issue with that decision could have been appealed to the board of zoning appeals, and any subsequent issue proper for judicial review through the filing of a common law writ of certiorari.[6] Accordingly, we find that the key issue for review here was subject to the discretion of the City's zoning authority because, rather than making a new law, this decision would be one which "'executes one already in existence.'" *Moore & Assocs.*, 246 S.W.3d at 575 (quoting *McCallen*, 786 S.W.2d at 639). Because it was a matter of discretion, any appeal of a decision regarding the issue would be proper through a common law writ of certiorari, not a declaratory judgment action. Therefore, we will treat the complaint as a common law writ of certiorari. *See Moore*, 246 S.W.3d at 581.

## B. Ripeness

Having determined that Trezevant's complaint should be treated as a petition for a common law writ of certiorari, we now turn to the City's argument that Trezevant's failure to engage in the administrative process meant the common law writ of certiorari filed was unavailable and thus the claim was not ripe for review. The City claims that "Trezevant is trying to circumvent the building permit process" and that it has disregarded the "specific process to follow when seeking a building permit." Further, because Trezevant did not apply for a building permit to construct the proposed office building, the City maintains that the "claims are not ripe for review under the common law writ of certiorari." Trezevant contends that it had standing to bring the lawsuit and that the lawsuit itself was ripe for review because the City, through its attorney and through a zoning administrator, denied its request to have an office use permitted on the subject property. Having reviewed the record, we find that the filing of the writ of certiorari was premature and thus, the matter was not ripe for review and should be dismissed.

---

[6] To be clear, the issue is not proper for a writ of certiorari merely due to the existence of a tribunal which reviews decision of the zoning administrator, but rather because the determination of whether the proposed extension is proper would be best decided by the zoning administrator's experience and expertise in applying the statute to the subject property. *See Duracap,* 574 S.W.3d at 869.

The doctrine of ripeness is intended to aid "the courts in determining whether a particular case presents a justiciable legal issue." *B & B Enter. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010). "The ripeness doctrine focuses on whether the dispute has matured to the point that it warrants a judicial decision." *Id.* Ripeness "is closely related to the 'exhaustion of remedies' doctrine." *Id.* (citation omitted). The City's argument is akin to one claiming that Trezevant failed to exhaust its administrative remedies prior to filing the lawsuit. As our Supreme Court has previously explained, "[g]enerally when a statute provides an administrative remedy, one must exhaust this administrative remedy prior to seeking relief from the courts." *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn. 1997). The purpose of this doctrine is to permit an administrative body to:

> (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of interruption; and (3) compile a record which is adequate for judicial review. In addition, an agency has an interest in discouraging frequent and deliberate flouting of the administrative process.

*Id.* However, if exhaustion of remedies is not mandated by the "'plain words'" of the statute governing the issue, then it is "not statutorily required." *Id.* (*quoting Reeves v. Olsen*, 691 S.W.2d 527, 530 (Tenn. 1985)). We have previously stated that, if exhaustion is not mandated by the statute, then it is a matter of judicial discretion.[7] *Reeves*, 691 S.W.2d at 530. There is no statutory requirement in the present case, thus, we use our discretion to determine whether Trezevant Enterprises should have been required to exhaust its administrative remedies before filing the subject action. *See Moore & Assoc.*, 246 S.W.3d at 580.

Tennessee Courts have considered whether a party should have been required to exhaust its remedies prior to seeking judicial review in the zoning context several times. *See Ready Mix,* 380 S.W.3d at 65-66 (finding a party was not required to exhaust its administrative remedies where the key issue for review was whether the landowner "by its actions prior to the passage of the zoning ordinance, invoked the protections of [the Grandfather Clause]" and thus presented a question of law.); *Moore & Assoc.*, 246 S.W.3d

---

[7] Several exceptions to the exhaustion of remedies doctrine exist, including when "the party challenges the validity of an ordinance or statute that would be applied by the administrative decision maker." *B.F. Nashville, Inc. v. City of Franklin*, No. M2003-00180-COA-R3-CV, 2005 WL 127082, at *6 (Tenn. Ct. App. Jan. 21, 2005) (citing *State ex rel Poteat v. Bowman,* 491 S.W.2d 77, 80 (Tenn. 1973)). Another exception exists where a party "raises only questions of law rather than questions of fact." *Id.* (*citing Bracey v. Woods*, 571 S.W.2d 828, 830 (Tenn. 1978)). Another exception exists "where pursuit of administrative relief would be futile or useless." *Id.* (citing *State v. Yoakum*, 297 S.W.2d 635, 642 (Tenn. 1956)). Thus, "a party is not required to seek administrative review or relief if the administrative process would [afford] no review 'over [the] key issues' and would [afford] no possible remedy." *Id.* (quoting *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 479 (Tenn. 2004)).

at 580 (recognizing that courts are generally to defer "to the responsibility and authority of local zoning officials," and thus the zoning board should have been permitted to "apply its experience and expertise" to determine whether the zoning administrator erred when it refused to issue a certificate of compliance with a zoning ordinance and cure any error which may have occurred and thus the builder was required to exhaust its administrative remedies.); *Cherokee Country Club, Inc., v. City of Knoxville*, 152 S.W.3d 466, 479 (Tenn. 2004) (stating the landowner was not required to exhaust its administrative remedies prior to seeking a writ of mandamus where the administrative appeal "would have afforded no review over the key issues and would have afforded no possible remedy."); *Coe v. City of Sevierville*, 21 S.W.3d 237, 241-42 (Tenn. Ct. App. 2000) (refraining from requiring a landowner to exhaust her administrative remedy where she filed an application after filing a petition for writ of certiorari but the zoning authority chose to hold the application in abeyance pending the outcome of the litigation); *Thompson v. Dep't of Codes Admin., Metro. Gov't of Nashville & Davidson Cnty.*, 20 S.W.3d 654, 659-60 (Tenn. Ct. App. 1999) (finding a landowner was not permitted to file a petition for a writ of certiorari where his application for a building permit was denied, but the decision was not appealed to the applicable board of zoning appeals and thus only reviewing the owner's constitutional claims as a declaratory judgment action rather than also reviewing the zoning administrator's decision for arbitrariness or capriciousness); *Poteat,* 491 S.W.2d at 80 (finding a plaintiff was required to exhaust his remedies prior to obtaining a writ of mandamus to compel the issuance of a building permit).

Clearly, whether a party is required to exhaust its administrative remedies prior to seeking judicial review of a zoning decision is dependent on the facts of the individual case. Thus, we must determine whether the facts of this case lead to the conclusion that the City's zoning authority "would have afforded [ ] review over the key issues" of the claim, whether it could have provided a remedy, or if some other good reason existed to permit Trezevant Enterprises to proceed with this litigation despite its failure to formally apply to the proper zoning authorities prior to initiating this litigation. *See Cherokee Country Club*, 152 S.W.3d at 479. The "key issue" in this instance, is whether the proposed extension of the non-conforming use of the property is permissible pursuant to the Grandfather Clause. As stated *supra*, our Tennessee case law supports the contention that this type of decision is one subject to the discretion of the zoning authority. Thus, an application for a building permit at the subject property and any subsequent review would have permitted the local zoning authority to exercise its experience and expertise to determine whether the extension was proper, "afford[ing] [ ] review over the key issue[ ]." *See Cherokee Country Club*, 152 S.W.3d at 479. The board also would have been able to grant the requested remedy as it had the power to issue a building permit if it determined the office constituted a reasonable extension of the non-conforming use.

The trial court appears to have been concerned with the "futility" of requiring Trezevant to proceed through the administrative process. As stated *supra*, one exception to the exhaustion of remedies doctrine exists "where pursuit of administrative relief would

be futile or useless." *See B.F. Nashville*, 2005 WL 127082, at *6. In its final order, the trial court recognized that "Trezevant ha[d] taken no formal action to obtain [the City]'s approval" of the construction. However, the trial court stated it would not require Trezevant to file an application because "it would be an effort in futility" to do so as "Germantown's position [was] unequivocal as to not allowing the proposed office building." Thus, the trial court essentially determined that the circumstances excused Trezevant from exhausting its administrative remedies because the "pursuit of administrative relief would [have been] futile or useless." *See B.F. Nashville*, 2005 WL 127082, at *6. We respectfully disagree.

The extent of the proceedings which occurred prior to the filing of the complaint seem to be that Trezevant Enterprises received a letter from the City's attorney which stated that the operation of the nursery business could continue but the "nature of that business" could not be changed and that "it [was] clear that such leasing of office space is not a permitted non-conforming use." Mr. Trezevant also met with the City's Director of Community Development, who indicated that he did not think the Mayor or Alderman of the City would permit the construction of the office. The trial court determined that these facts showed that the City's position was that the office construction would not be permitted. The City disagrees and claims the communications were advisory only, rather than binding rulings, and that it has been deprived of the opportunity to rule on the request due to Trezevant's refusal to apply for a building permit.

Importantly, neither the City's attorney nor Mr. Cook represented the administrative body which would have held the discretion to make this decision. Further, these communications were made over ten years prior to Trezevant's filing of plans and thus, could not have been rulings on the plans which were submitted. Therefore, we find that the record does not support the trial court's finding that these communications proved the filing of an application would have been futile. Accordingly, we find that Trezevant Enterprises was required to exhaust its administrative remedies prior to filing a petition for a common law writ of certiorari and the failure to do so meant "a writ of certiorari was not available." *Moore & Assoc.*, 246, S.W.3d at 577. Accordingly, the case should be dismissed.[8]

---

[8] We would also note the detrimental effect that the lack of formal administrative proceedings has on the ability of courts to conduct a certiorari style review. We have previously explained that "'[a] [w]rit of certiorari is an order from a superior court to an inferior [tribunal] to send up the record for review.'" *State v. Farris*, 562 S.W.3d 432, 441 (Tenn. Ct. App. 2018) (quoting *Utley v. Rose*, 55 S.W.3d 559, 563 (Tenn. Ct. App. 2001) (some brackets present in original). "'The basic purpose of the common law writ of certiorari is to curb "illegal" actions by the inferior tribunal.'" *Id.* (quoting Lawrence A. Pivinick, *Tenn. Cir. Ct. Prac.* §3:13 (2017)). We also stated that a "common law writ of certiorari is available 'where an inferior tribunal, board, or officer, exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." *Id.* (quoting Tenn. Code Ann. § 27-8-101.) Importantly for our purposes, when a common law writ of certiorari is issued, "the record of the inferior tribunal brought before the court to determine whether the

Because Trezevant Enterprises never engaged in the administrative process, no inferior tribunal, board or officer, exercised a judicial function as required by the statute. *See* Tenn. Code Ann. § 27-8-101. Logically, for a court to conduct a review of an inferior entity, that entity must have engaged in some judicial function. Accordingly, where no judicial function has occurred, certiorari review is not ripe for review. Further, no good reason exists to excuse the failure of Trezevant Enterprises to exhaust its administrative remedy of applying for a building permit and, if necessary, to appeal any unfavorable decision to the board of zoning appeals. We would also note that, as stated above, "an agency has an interest in discouraging frequent and deliberate flouting of the administrative process." *Thomas*, 940 S.W.2d at 566. If we were to permit Trezevant Enterprises to bypass the administrative process by filing this action, we would permit the "flouting of the administrative process." *Id.* At that point, there would be little point for the administrative process to exist.

### IV. Conclusion

Because the complaint was a petition for a writ of certiorari, the claim was not ripe for review by the trial court on a writ of common law certiorari as Trezevant failed to exhaust its administrative remedies, and there was no ruling or record of the board of zoning appeals available for review. The judgment of the trial court is reversed and the case is dismissed. Costs of this appeal are taxed to the appellee, Trezevant Enterprises, Inc.

_____
CARMA DENNIS MCGEE, JUDGE

---

inferior tribunal proceeded according to the applicable law." *Id.* at 442; *see Gore v. Tenn. Dep't. of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003) (stating that the issuance of a writ of certiorari is "a command by the trial court to the inferior tribunal or administrative agency to send the record made before the agency in the proceeding to the court for review of that record.")